No. 30,169.

ENRIQUE MARQUEZ and EVA MARQUEZ, *Appellees,* v. FORREST C. CAVE, THE BANKERS MORTGAGE COMPANY et al., *Appellants.*

(5 P. 2d 1081.)

Opinion filed December 12, 1931.

*J. A. Fleming, Nelson J. Ward* and *Mary H. Koger,* all of Topeka, for the appellants.

*J. Willard Haynes* and *T. F. Railsback,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs purchased, under a contract from the defendants, the Bankers Mortgage Company and Forrest C. Cave, a certain residence property in Kansas City. The residence was destroyed by fire. Defendants declined to rebuild. Plaintiffs brought this action to have their interest in the property determined and to have it paid out of the proceeds of the insurance policy on the property. The trial court made findings of fact and rendered judgment for plaintiffs. The defendants have appealed and contend: (1) That the contract gave plaintiffs only an option to buy the property; (2) that they had no claim in the proceeds of the insurance policy; and (3) that there was no basis for the judgment under the pleadings and the proof.

A fuller statement of facts should be made, which, briefly, is as follows: The record title to the property in question stood in the name of Forrest C. Cave, an employee of the Bankers Mortgage Company, and the property was encumbered by a mortgage to the Bankers Mortgage Company in the sum of $2,000. Plaintiffs formerly owned a small residence property in Kansas City, which they

had purchased under contract and on which they were making payments. They exchanged their equity in this property as a down payment on the property in question. They executed a contract for the purchase of the property in question with the Bankers Mortgage Company and Forrest C. Cave. By the terms of this they had credit on the $3,000 purchase price of the property of $400, leaving a balance of $2,600 to be paid, and were to make payments of $25 per month for twelve months and thereafter $20 per month, which was to be applied on the purchase price and the interest thereon at seven per cent. They were entitled to the use of the property, rent free, but were to keep the buildings insured in the name of Forrest C. Cave and pay the taxes and special assessments thereon. There were provisions in the contract for its forfeiture for nonpayment. The entire contract is not set out in the abstracts or briefs, but we are told in the briefs of the appellees that it contained a provision for the conveyance of the title to plaintiffs when the price agreed upon was fully paid, and this statement is not controverted. The plaintiffs entered into possession of the property and occupied it as a home, made substantial repairs and improvements thereon, and made the payments of $25 per month for nine months, when the residence was destroyed by fire, the origin of which was unknown. There was an insurance policy on the property in the name of Forrest C. Cave, with a loss-payable clause to the Bankers Mortgage Company, and they, and agents of the insurance company, agreed upon the amount of the loss as being $1,780.74. Soon after the fire plaintiffs' counsel wrote the Bankers Mortgage Company, for the attention of Forrest C. Cave, advising that he represented plaintiffs, who had purchased the property on contract, that the house had been destroyed by fire, and that plaintiffs were taking up the matter with a view of either rebuilding or securing some sort of a settlement for plaintiffs' equity in the premises, and suggesting that some arrangement should be made before plaintiffs proceeded with further payments. To this letter Mr. Cave replied that they had notified the insurance company of the loss, that it was not necessary for plaintiffs to make further payments until the loss was adjusted, and stating, "we will have to get together with Mr. Marquez and arrange for the rebuilding of this property and make a new loan."

To protect itself the insurance company made its draft in settlement of the loss payable to plaintiffs and the Bankers Mortgage

Company and Forrest C. Cave, and sent it to their local agent at Kansas City for delivery. Mr. Cave visited plaintiffs and urged them to indorse this draft so the Bankers Mortgage Company and he could get the money. Plaintiffs hesitated to do that until they had some understanding or settlement between them and the Bankers Mortgage Company and Cave. Cave suggested conveying to plaintiffs the lots on which the residence had burned as a settlement of their interest. They told him they would accept that, but conveyance was not made. Plaintiffs then brought this action, primarily against the Bankers Mortgage Company and Forrest C. Cave, to have determined their interest in the property, and also made the insurance company and its local agents defendants, and obtained an order restraining them from turning over the draft in settlement of the insurance loss pending the further order of the court.

The principal controversy in the case hinged around the nature of the contract between the parties. On that point the court found:

"The court further finds that the transaction between the plaintiffs and the defendants, Forrest C. Cave and the Bankers Mortgage Company, was intended by all parties as the sale and purchase of the real estate described in plaintiff's petition and in said contract, and said intention to purchase and to sell was evidenced by said contract so drawn as to be denominated an option contract, but as a matter of fact said instrument was executed by both parties as a convenient method of selling said property to the plaintiffs."

Appellants complain of this finding and contend that the contract, by its wording, was a mere option, such as the court had before it in *Caldwell v. Frazier*, 65 Kan. 24, 68 Pac. 1076, and allied cases. The point is not well taken. Clearly the contract is not a simple option. It not only fixes the price of the property, but gives credit "on the purchase price" of the $400 down payment, provides that the monthly payments in excess of interest shall reduce the sum to be paid, and for the ultimate conveyance of the property when full payment has been made. It is true that it is headed "Option Agreement," and contains many words and phrases suitable or common in pure option agreements, but these do not destroy the obvious purpose and nature of the contract. The contract should have been drawn fairly to represent the transaction in which the parties were engaged. To mingle into it terms and expressions with respect to an option foreign to the real purpose of the parties tends only to confusion. The court correctly found from the contract

itself that it was one for the sale of the property, and the oral testimony with respect to the transactions of the parties confirms that view. If it were a contract for sale and purchase of the property the vendees had an interest in it in proportion to the payments made. (*McGregor v. Ireland,* 86 Kan. 426, 121 Pac. 358.)

Appellants further contend that under no view of the matter could plaintiffs have any interest in the proceeds of the insurance policy, since the title to the real property was in the name of Cave and the insurance policy in his name, and the Bankers Mortgage Company had a mortgage on the property for more than the amount of the· loss, with a mortgage clause in its favor in the insurance policy. With respect to that the court found:

"The court further finds that the defendant, the Bankers Mortgage Company, is the owner and holder of a mortgage upon said property, but that it joined with the defendant, Forrest C. Cave, in the execution of said contract and thus and thereby became a party to the entire transaction."

This finding was supported by the evidence. The contract with plaintiffs was executed by the Bankers Mortgage Company as well as by Forrest C. Cave. The evidence disclosed that the contract with plaintiffs was approved by the president of the Bankers Mortgage Company rather than by Forrest C. Cave; also that Forrest C. Cave was in the employment of the Bankers Mortgage Company—in short, that the Bankers Mortgage Company was as strongly bound to plaintiffs in this contract as was Cave.

The court found, among other things, that the plaintiffs had the use of the property, which was reasonably worth $25 per month, the amount of the monthly payments made on the contract, and found that their interest in the property at the time of the fire was $400. Defendants offered to show that the equity of plaintiffs in the small property which they traded for a down payment on the property in question was not worth $400; that that value was a trading value. The court excluded the evidence, and defendants offered it on the hearing of the motion for a new trial. Appellants complain of the exclusion of this evidence. It is true that when persons place a trading value on property, which is used in its exchange, greatly in excess of its true value, courts will in some cases hold their interest in the property acquired to be the true value of that exchange. But here the difference, in any event, could not be so great as to be very material. The evidence disclosed that plaintiffs had actually paid $290 on the former property, which

they had purchased at a value of $1,200. The opinion of witnesses as to the value of a $1,200 property would perhaps differ as much as $100 or more, hence the excluded evidence, if admitted, should not have changed the result. In fact, the court in this case might have found the value of plaintiffs' interest in the property in question to be the amount of their down payment plus subsequent payments, less interest and taxes, which would have made it greater than the amount allowed.

The trial court was confronted with a somewhat unusual situation and dealt with it fairly and judiciously. The result reached is just. There is no material error in the proceeding, and the judgment of the court below is affirmed.